## Case No. 13,668.
### SWAN v. BANK OF THE UNITED STATES et al.
[2 Brock. 293.] [1]

Circuit Court, D. Virginia. May Term, 1827.

PRINCIPAL AND SURETY—JUDGMENT AGAINST SURETY—COLLUSION—DEBT PREVIOUSLY SATISFIED—INJUNCTION.

W. obtained a loan from the Bank of the United States, with S. as his endorser. The note was subsequently endorsed by H., for whose indemnity for any loss which might accrue to him in consequence thereof, W., the drawer, executed a deed of trust. W. afterwards executed other deeds of trust on the same land for the security of other creditors, and, among others, of V. The deed for the benefit of H., was not recorded, but full notice of its execution was given to V. Before the deed to V. was made, he made a calculation of the amount of the prior liens, and said that the property was sufficient to pay them, and secure him. The land was sold, subject to the prior liens, for the payment of V.'s debt. V bid the amount of his debt, and the property was struck out to him. V. afterwards died, and his executors proposed to the bank to pay the note on which S. was endorser, on condition that the bank would institute suit against S. for their benefit, to which terms the bank acceded, and obtained a judgment against S. S. filed his bill, stating these circumstances of which he had no knowledge until the judgment was obtained, as he averred, and prayed an injunction, which was granted. The injunction was made perpetual.

In equity.

MARSHALL, Circuit Justice. Blake B. Woodson had obtained a loan from the Bank of the United States on his note, with John T. Swan, the plaintiff, as his endorser. After some time, an additional endorser was required by the bank, whereupon Walthal Holcombe agreed to add his name to that of Swan, upon which, the accommodation was continued. In October, 1818, Blake B. Woodson executed a deed conveying a tract of land in the county of Cumberland, to Benoni Overstreet, in trust, that "if the said Walthal Holcombe shall be likely to suffer on account of the undertaking of the said Walthal Holcombe, for the said Blake B. Woodson, at the bank aforesaid, in the opinion of the said Benoni Overstreet, or in the case of the note in the said bank now, or hereafter, with the name of the said Walthal Holcombe as endorser thereon for the said Blake B. Wood-

---

[1] [Reported by John W. Brockenbrough, Esq.]

son, shall be protested, whereby the said Walthal Holcombe, his heirs, etc., shall in the opinion of the said Benoni Overstreet, be likely to suffer for the amount of any such protest, costs, and charges, or any part thereof, the said Benoni Overstreet at the request of the said Walthal Holcombe, shall" on thirty days' notice, proceed to sell the trust premises. Blake B. Woodson executed other deeds of trust on the same land for the security of other creditors, and among others, for the security of Samuel W. Venable, under whose deed the land was sold, and the said Venable became the purchaser thereof. The deed to Benoni Overstreet for the benefit of Holcombe, was not recorded, but full notice of it was given to Samuel W. Venable. At, and before the sale, it was shown to him by Benoni Overstreet, the trustee. After he had read it, the said Overstreet observed that it was not recorded, on which Venable admitted its validity as to him. Before the deed to secure Venable was executed, he had a conversation with Edward Bedford respecting the affairs of Blake B. Woodson, in which Bedford informed him of the several liens on Woodson's land, including that for the security of Holcombe, on which Venable made a calculation of their amount, and said that the land would be sufficient to discharge those liens and pay the debts due to him. The deed for his benefit was executed soon afterwards. When the conversation took place between Venable and Overstreet at the sale, they again made a calculation of the liens which were found to amount, including the debt due to the bank, to about $9,000. The land was sold for the payment of the debt due to Venable, subject to the prior liens, among which, the debt due to the bank was mentioned, and Venable bid the amount of his own debt, and being the highest bidder, the land was struck out to him. A higher price had been offered for the land and rejected by Blake B. Woodson. This offer was repeated during the bidding, and again rejected, about which time the land was struck out to Samuel W. Venable.

The accommodation to Blake B. Woodson, with John T. Swan, and W. Holcombe as endorsers, was continued by the bank, and before any change took place in the debt, Samuel W. Venable died, leaving N. E. Venable and A. W. Venable his executors. They proposed to the bank to pay the debt, provided the bank would put the note in suit against John T. Swan, for their benefit. This proposition was acceded to, and a judgment obtained in the name of the bank against John T. Swan. Swan filed his bill, stating the foregoing circumstances, alleging his ignorance of these transactions, until after the judgment was rendered, and praying an injunction. The defendants, the executors of Samuel W. Venable, admit their liability to W. Holcombe, but insist that the lien of Holcombe, as he has not been compelled to pay anything, and is now discharged from all responsibility, cannot be set up by the plaintiff. It is perfectly clear, that Holcombe, as a subsequent endorser, having made no arrangement whatever with Swan, the previous endorser, which connected them in any manner with each other, would not have been responsible to Swan, for any portion of the debt paid by that endorser, but would have had recourse against Swan, to be indemnified for any sum he might be compelled to pay. It must be admitted, that the deed of trust was intended solely as an indemnity to Holcombe, and was not executed for the benefit of Swan. If Swan can now avail himself of it, his right to do so grows out of subsequent transactions.

In considering this case, the first inquiry that presents itself to the mind is, could Swan, in the event of being compelled to pay the debt to the bank, before the sale of the trust property, have resorted to that property for indemnity? By force of the mere terms of the deed, he undoubtedly could not; but would a court of equity have given its aid? The property, after Holcombe was discharged from his endorsement, would have reverted to Woodson, and the trustees would have been seized in trust for him. Consequently, any creditor might have pursued it; and a court of equity would, if necessary, at least have removed the trust out of the way. But when the land became charged with subsequent deeds of trust, the creditors for whose benefit those deeds were made, would not be postponed to that made for Holcombe, farther than was necessary to satisfy the terms of that deed. Consequently, Swan, had he in that state of things been compelled to pay the debt to the bank, could have had no pretext for claiming the aid of Holcombe's deed against the holder of any subsequent deed, or against any purchaser at a sale made in pursuance of such deed. If his case is mended, it is by the facts attending the sale, and the discharge of the note in bank, as disclosed by the testimony. It is proved, that when Mr. Venable obtained the deed of trust, he valued the property at a sum sufficient to discharge the debt due to himself, after discharging all prior incumbrances, including that of Holcombe. It is also proved, that this computation was again made at the sale, and that the land was at that time thought a good purchase, supposing it to be charged, not contingently, but positively, with the debt to the bank. These facts show, that in the mind of Mr. Venable himself, the debt due to the bank constituted a part of the purchase money; and would probably have afforded strong inducements to any creditor, acting solely under the influence of his own feelings, and with the single desire of obtaining his debt, to press Mr. Holcombe, who was secured, rather than Mr. Swan, who could revert to no fund for reimbursement. Had the creditor pursued this course, the land purchased by Mr. Venable

would have been subjected to the debt, and it will not be alleged that he could have had any recourse, in law or equity, against Mr. Swan as the prior endorser. Had the land still retained the value at which it was estimated when sold, all will admit that that is the course which, in right and justice, the affair ought to take. But, although the fact is not alleged in the record, the reduced price of property, real as well as personal, is a matter of general notoriety, and will certainly justify the defendants in avoiding the payment of this debt, if the law will enable them to do so. Had the bank, without their interposition, proceeded of itself, to coerce payment from Mr. Swan, he could not, perhaps, have obtained the aid of a court of equity. Had the representatives of Mr. Venable remained passive spectators of the procedure, it is probable that the circumstances attending the purchase made by their testator, would not have affected the estate. But they have not remained passive spectators. The bank has acted at their instigation, and by their procurement. They have been the means of inducing the bank to proceed against a surety having no indemnity, rather than against one holding an indemnity from the original creditor. Although this might have been perfectly justifiable in a court of equity, if disconnected from the circumstances attending the taking of the trust deed, and the sale of the property under that deed, it cannot be sustained when viewed in connexion with those circumstances.

An additional argument, which has been suggested by my brother judge, is entitled to great weight. It is, that if Mr. Venable may coerce the payment of this money from Swan by using the name of the bank, he gives Swan an action against Woodson, and thus renders Woodson liable for the money which his land was intended to secure.

The injunction is made perpetual.

NOTE. From the decree perpetuating the injunction in this cause, the defendants, executors of Samuel W. Venable, appealed to the supreme court of the United States. At the January term of the supreme court, 1830, on motion of Mr. Wirt, of counsel for the appellee, Swan, the cause was docketed and the appeal dismissed, "the appellants having failed to lodge a transcript of the record in the said cause with the clerk of this court, agreeably to the rules of" the supreme court. 3 Pet. [28 U. S.] 68.